# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA ANN BELL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-16-96-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Lisa Ann Bell requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on October 18, 1970, and was forty-three years old at the time of the most recent administrative hearing (Tr. 387). She completed the tenth grade, and has worked as a nurse aide (Tr. 192, 375). The claimant alleges she has been unable to work since May 5, 2007, due to degenerative disc disease, problems with her knees, morbid obesity, and depression (Tr. 191).

**Procedural History**

On February 8, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated August 24, 2011 (Tr. 13-25). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-12-124-SPS, and remanded the case to the ALJ with instructions to properly account for the claimant's obesity (Tr. 438-451). ALJ Bernard Porter held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated October 2, 2014 (Tr. 359-377). The Appeals Council again

denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and five pounds frequently, stand/walk two hours in an eight-hour workday, sit six hours in an eight-hour workday. Additionally, he found she was limited to occasionally using foot and hand controls, kneeling, and climbing ramps and stairs; frequently balancing, stooping, and crouching; and never crawling, or climbing ladders or scaffolds. Furthermore, he found she was precluded from work at unprotected heights, around moving mechanical parts, concentrated exposures to humidity, wetness, dust, fumes, and gases, and environments with temperature extremes. Finally, he limited her to simple tasks and simple work-related work decisions with occasional interaction with co-workers and supervisors but no interaction with the general public with time off tasks accommodated by normal workday breaks (Tr. 366). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, document scanner, address clerk, and assembly inspector (Tr. 375-376).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess her RFC, specifically as to her mental impairments, and (ii) failing to properly consider the

opinion of her treating physician, Dr. Michael Irvin, D.O. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

On remand, ALJ Porter determined that the claimant had the severe impairments of obesity, lumbar disc disease, diabetes mellitus, neuropathy, degenerative joint disease of the knees, and major depression (Tr. 361). The medical evidence reflects that on January 17, 2008, a CT scan of the lumbar spine revealed mild central canal stenosis at L4-L5 and L5-S1, as well as degenerative disk disease L5-S1 (Tr. 246). On October 8, 2008, she underwent a left knee arthroscopy with partial medial and lateral meniscectomy, as well as partial chrondoplasty of the trochlear groove and medial femoral condyle (Tr. 254).

Treatment notes from Dr. Irvin indicate the claimant reported back pain, joint pain, and left knee pain (Tr. 264-275, 327-330). He further noted she had a slowed gait, decreased range of motion in the back, and pain with range of motion in the back (Tr. 327, 638, 641). Treatment notes also reflect the claimant had a BMI of over 50 (Tr. 327, 638).

In June 2011, Dr. Irvin completed a physical Medical Source Statement (MSS), indicating that the claimant could lift/carry less than ten pounds frequently or occasionally, that she could stand/walk less than two hours in an eight-hour workday, that she could stand/walk thirty minutes continuously, that she could sit less than two hours in an eight-hour workday, and that she could sit for one hour continuously (Tr. 331). He stated that she was limited in pushing/pulling, but not to what extent (Tr. 332). Additionally, he indicated that she could never climb or crawl, and only occasionally

balance, stoop, kneel, crouch, reach, handle, finger, or feel (Tr. 332). Furthermore, he indicated she needed to avoid heat and cold (Tr. 332). He stated that this opinion was based on a physical exam, and that his opinion applied from May 1, 2009 through June 18, 2011 (the time of the opinion (Tr. 332). On December 15, 2010, Dr. Irvin sent a letter stating that the claimant was unable to seek gainful employment due to her medical conditions (Tr. 335). On June 20, 2011, Dr. Irvin prepared another letter, stating that he had been treating her for several years and that, as a result of her chronic pain, she was unable to lift, pull, or push, and that she also required frequent rest periods and could not stand or sit in one position for any length of time (Tr. 334). On November 29, 2011, Dr. Irvin wrote another letter, stating that the claimant suffered from multiple medical conditions and as a result was unable to seek gainful employment at that time (Tr. 648).

A state reviewing physician found the claimant could perform sedentary work with no additional limitations (Tr. 317-323).

On May 6, 2010, Dr. Gordon B. Strom conducted an internal medicine exam of the claimant, noting that she had adequate range of motion of the cervical and thoracic spine, but a great deal of difficulty flexing and extending her back because of her obesity (Tr. 285). She also complained of knee pain when walking (Tr. 285). Dr. Strom assessed her with morbid obesity, compressive neuropathy involving both arms, prior gallbladder surgery with dumping syndrome, and degenerative disc disease involving the lumbar spine without radiculopathy (Tr. 286). He recommended that she would benefit from weight loss (Tr. 286).

As to her mental impairments, the evidence reflects that the claimant sought treatment at Carl Albert Mental Health Center. Those records reflect a diagnosis of major depressive disorder, recurrent, severe without psychotic features (Tr. 564). In January 2014, she reported difficulty affording her diabetes medications, as well as continued symptoms of depression and anxiety (Tr. 572-597). On January 7, 2014, the claimant reported that her medications were helping and she wished to continue them (Tr. 599).

On May 18, 2010, Dr. Theresa Horton conducted a mental status exam of the claimant (Tr. 291). She assessed the claimant with major depressive disorder, recurrent, severe, as well as chronic pain and morbid obesity (Tr. 294). She found the claimant was capable of understanding, remembering, and managing simple and complex instructions and tasks, and appeared capable of social and emotional adjustment into occupational and social settings, but that symptoms affected her level of motivation and initiation (Tr. 295). Dr. Horton believed the claimant was receiving inadequate mental health care, and that her poor health with chronic pain and financial problems contributed to her isolation and depression (Tr. 295)

On June 17, 2010, a state reviewing physician found the claimant had moderate limitations in the three areas of functional limitations, as well as one or two episodes of decompensation (Tr. 308). The physician then found the claimant markedly limited in the typical three areas of understanding and remembering detailed instructions, carrying out detailed instructions, and interacting appropriately with the general public (Tr. 312-313). He then concluded that the claimant was able to perform simple routine tasks, that

she could relate to others for work purposes but should avoid working with the general public, and that she could adapt to a work situation (Tr. 314)

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as most of the medical evidence in the record. In particular, the ALJ noted the findings from Dr. Strom and Dr. Irvin, and discussed the effect of the claimant's obesity on her ability to perform work. He then noted that, despite her impairments, the record nonetheless objectively indicated mild central canal stenosis and degenerative disk disease, along with largely conservative treatment for her impairments (Tr. 370). The ALJ noted that the claimant saw Dr. Irvin seven times in three years and each exam was unremarkable until June 2011 when he found the claimant had pain with decreased range of motion and a slowed gait (Tr. 370). However, the ALJ also noted that Dr. Irvin continued with medication management and made no outside referrals (Tr. 370). Furthermore, the ALJ noted that in treatment records with Dr. Irvin from 2011 to 2012, the claimant made no complaints related to neuropathy in her hands or knee pain, in contrast with her current disability application, and exams were largely unremarkable except for back pain with decreased range of motion (Tr. 370). The ALJ also summarized Dr. Horton's mental status exam, as well as the treatment records from Carl Albert where her condition was largely stable on medications (Tr. 371). As to the state reviewing physicians, the ALJ found them consistent with the record evidence and adopted the functional assessment that the claimant could perform a range of simple, sedentary work, but noted that he assessed additional limitations in light of the claimant's testimony (Tr. 373). He gave "some weight" to Dr. Horton's assessment, but found that

the claimant could *not* understand, remember, and manage *complex* instructions (Tr. 373). As to Dr. Irvin, the ALJ noted his MSS as well as the prepared letters, and the standard for evaluating treating physicians. He then stated that he acknowledged that the treating relationship went back to April 17, 2008, but only had fifteen visits in four and a half years, largely for medication refills, and that he never referred her to a neurologist or orthopedist (Tr. 374). Furthermore, he found that Dr. Irvin's assessments were deficient and without medical documentation, noting that the only objective test showed mild central canal stenosis and degenerative disk disease, and that while she credibly had back and knee pain, it was not as limited as proposed by Dr. Irvin (Tr. 374). He thus declined to give Dr. Irvin's opinions controlling weight (Tr. 374).

First the claimant asserts that the ALJ failed to properly account for her mental impairments because a limitation to simple tasks and simple work-related decisions did not adequately account for the step three finding that she had moderate difficulties in maintaining concentration, persistence, or pace. She asserts that this step three finding required the ALJ to express work-related functional limitations related to this moderate limitation. In support, the claimant cites to a case where a consultative examiner indicated that the claimant was moderately limited in the ability to: carry out instructions, attend and concentrate, and work without supervision. *Jaramillo v. Colvin*, 576 Fed. Appx. 870, 872 (10th Cir. 2014). In that case, the Court noted that the ALJ had given great weight to that opinion, but that the ALJ's assigned RFC did not "capture[] any of the three *moderate* limitations." *Jaramillo*, 576 Fed. Appx. at 876 (emphasis in original). Instead, the court found that "[t]he limitation to simple, routine, repetitive, and

unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments . . . Rather, the ALJ was required to express those impairments 'in terms of work-related functions' or [w]ork-related mental activities.'" *Id.*, *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *6 (July 2, 1996). The claimant thus asserts that the ALJ likewise here failed to make a detailed mental RFC assessment including a narrative discussion. The Court disagrees.

In *Jaramillo,* a consultative examiner whose opinion had been given great weight had propounded limitations that the ALJ did not address. In *this* case, the ALJ found at step three that the claimant had mild restriction in activities of daily living, marked difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace, with no episodes of decompensation (Tr. 363-365). At step four, the ALJ recited, *inter alia*, the state reviewing physician's findings that she had found moderate limitations in concentration, persistence, or pace (specifically related to the ability to carry out detailed instructions), noting that the state physician's mental RFC assessment was that the claimant could perform simple routine tasks and relate to others for work purposes, but that she should avoid working with the general public, and that she could adapt to a work situation – in other words, accounting for the limitation to simple rather than complex work (Tr. 308, 314). The ALJ thus determined that the claimant was limited to simple tasks and simple work-related decisions with occasional interaction with co-workers and supervisors but no interaction with the general public, with time off tasks accommodated by normal workday breaks, based on the state reviewing physician opinion in combination with the hearing testimony (Tr. 272). The Tenth Circuit has

stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the Court finds here that the RFC limitations adequately accounted for her moderate limitations.

Second, the claimant asserts that the ALJ erred in evaluating Dr. Irvin's treating physician opinion. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the

physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed Dr. Irvin's opinion. The ALJ's analysis of Dr. Irvin's opinion is set forth above. The Court finds that the ALJ *did consider* his opinion in accordance with the appropriate standards and properly concluded it was entitled to little weight. The ALJ thus did not err in failing to include any limitations imposed by Dr. Irvin in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). Moreover, the ALJ was not required to give controlling weight to any opinion to the effect that the claimant was unable to work, *see* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."), and the record is clear that the ALJ properly assessed Dr. Irvin's opinion. Here, the ALJ thoroughly and completely summarized the evidence and explained the inconsistencies, notes, and the

reasons for his finding, and an opinion on an issue reserved to the Commissioner is not entitled to special significance. *See* 20 C.F.R. § 416.927(e).

The ALJ specifically noted every medical record available in the lengthy administrative record from 1981 through 2013, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**